[No. 2478-1.   Division One.   January 13, 1975.]

THE STATE OF WASHINGTON, *Respondent*, v. JIMI TYRONE WRIGHT, *Appellant*.

*Wesley G. Hohlbein*, for appellant.

*Christopher T. Bayley, Prosecuting Attorney*, and *Ronald H. Clark, Deputy*, for respondent.

FARRIS, J.—Jimi Tyrone Wright was found guilty of the crime of murder in the second degree while armed with a deadly weapon. He appeals from judgment entered on the jury verdict.

On April 2, 1973, Wright shot and fatally wounded William Morris on the University of Washington campus. It is not disputed that Wright fired the fatal shot; the question at trial was whether the shot was fired in self-defense. The two had been involved in previous altercations which stemmed from Wright's relationship with Morris' ex-wife.[1] Both men were armed when Wright fired the fatal shot. The jury apparently rejected Wright's claim that Morris was reaching into his bag where a handgun was subsequently found when Wright fired the fatal shot and believed instead that Wright changed directions to walk so as to directly confront Morris, then drew his handgun and fired without provocation.

Error is assigned:

1. To the refusal of the trial court to permit a lawyer for the accused to put on the coat that Morris was wearing at the time of his death. The purpose of the demonstration was to support Wright's claim of self-defense by matching the bullet hole in the coat with the entry point of the bullet into Morris' body to show that Morris was reaching across his body into his bag when the shot struck him.

2. To the court's permitting the State to impeach Mrs. Morris who was called as its witness.

3. To the failure to grant a mistrial following certain questions from the State which allegedly inferred that Wright was a draft evader.

4. To the giving of instructions Nos. 13 and 15.

5. To the failure to grant a new trial or a mistrial based on jury misconduct.

We affirm.

■ Although the presentation of demonstrative evidence has been encouraged to give "the jury and the court a clearer comprehension of the physical facts . . ." *Kelly v. Spokane*, 83 Wash. 55, 58, 145 P. 57 (1914); *State*

---

[1]The deceased and Mrs. Morris were divorced in July of 1972; they had been separated since February of the same year. Mrs. Morris met Wright in November of 1971 and they began dating in March of 1972.

*v. Tatum,* 58 Wn.2d 73, 360 P.2d 754 (1961), it was not error to refuse the experiment here. The admissibility of demonstrative evidence

> rests within the sound discretion of the trial court, and such evidence should be based upon conditions and circumstances substantially like the facts which are sought to be proved. *Seattle-First Nat'l Bank v. Rankin,* 59 Wn.2d 288, 367 P.2d 835 (1962); *Sewell v. MacRae,* 52 Wn.2d 103, 323 P.2d 236 (1958); *Bremerton v. Smith,* 31 Wn.2d 788, 199 P.2d 95 (1948).

*State v. Smith,* 74 Wn.2d 744, 767, 446 P.2d 571 (1968), *rev'd on other grounds* (death penalty overturned), 408 U.S. 934, 33 L. Ed. 2d 747, 92 S. Ct. 2852 (1972); 5 R. Meisenholder, Wash. Prac. § 36 (1965).

The party who was to wear the coat for the proposed demonstration weighed 15 pounds less and was 3 inches shorter than the deceased. There was no showing of a similarity in their weight distribution. In addition, because the demonstration was to be performed inside, wind conditions on the day of the incident would not be comparable. We therefore cannot hold that the trial court's exercise of discretion was manifestly unreasonable or based upon "untenable grounds, or for untenable reasons." *State ex rel. Carroll v. Junker,* 79 Wn.2d 12, 26, 482 P.2d 775 (1971). Further, the coat was placed in evidence and Wright was permitted to enter expert testimony on the issue and to argue his theory to the jury. *See State v. Smith, supra.* Even if the demonstration had been based on conditions and circumstances substantially like the facts which Wright sought to prove, the court could have concluded that the jury had a clear comprehension of the physical facts in the absence of the demonstration.

Mrs. Morris was called as a witness by the State. In the course of direct examination, she was asked what her feelings were toward Wright. The relevancy and prejudicial effect of her answer were the basis of an objection which resulted in a colloquy between counsel and the court consuming over five pages of the record. In the course of the

discussion, much of which was out of the presence of the jury, the court permitted Mrs. Morris to answer and then sustained an objection to her answer.

Q  (By Mr. Miller) [Attorney for plaintiff] At this time, Mrs. Morris, what are your feelings toward Mr. Wright?

MR. HOHLBEIN [Attorney for defendant]: I am going to object to the materiality and the relevance of that, improper.

THE COURT: Objection is overruled.

. . .

A  My feelings at this time, I suppose as anyone else's feelings would be when involved in such an incident, the father of my son has been killed and I'm at this point a very innocent party.

. . .

MR. HOHLBEIN: I am going to object because she is talking, her feelings about her son are not relevant to this defendant's guilt or innocence and I cannot state that too strongly, your Honor.

THE COURT: All right. The objection is sustained.

MR. HOHLBEIN: The Court will instruct the jury on sympathy and I want to raise the objection.

THE COURT: You will receive an instruction on that.

Wright argues that despite the curative instruction, the testimony aroused the passion of the jury unduly prejudicing his case.

■■  We do not commend the State for the irrelevant and prejudicial line of questioning but we cannot rule as a matter of law upon the record before us that the incident influenced the jury to such a degree that it affected the verdict. A trial judge is vested with wide discretion in determining whether an error can be cured by an instruction. *State v. Downs*, 11 Wn. App. 572, 523 P.2d 1196 (1974); *State v. Thrift*, 4 Wn. App. 192, 480 P.2d 222 (1971). We were not present at trial. The record must therefore leave no doubt on the question of prejudice if an appellate court is to find that the trial court abused its discretion in its ruling. The record here fails to meet the test.

The following colloquy occurred during Wright's cross-examination:

Q (By Mr. Miller) What did you do between September of '70 and '71?
A I went to Vancouver.
Q Why were you living in Vancouver?
A Well, I left Chicago. I was tired of it and I just went to Canada because I just wanted to get in a place that was unlike Chicago.
Q Were you ever in the military?
A No, I wasn't.

. . .

> MR. HOHLBEIN: Motion for a mistrial, your Honor. Counsel, unless he has something that I don't know about, is suggesting that this man went to Canada for purposes of draft evasion, which is a federal offense, which is a crime. I think it is improper to ask him a question like that to repute that, unless he has something further to go on.

Wright argues that the State's questions intimated that he was a draft evader and so prejudiced the jury that a mistrial should have been granted. We have no doubt that an objection to the line of questioning should have been sustained but whether it required the granting of a mistrial was within the trial court's discretion. *State v. Bishop*, 6 Wn. App. 146, 491 P.2d 1359 (1971); *State v. Downs, supra. See also State v. Whetstone*, 30 Wn.2d 301, 191 P.2d 818 (1948). The questions should not have been asked but from a careful review of the record

> [w]e are satisfied that the average jury would not have found the state's case "significantly less persuasive" had the improper question never been asked nor answered. *Schneble v. Florida*, 405 U.S. 427, 31 L. Ed. 2d 340, 92 S. Ct. 1056 (1972).

*State v. Butler*, 9 Wn. App. 347, 352, 513 P.2d 67 (1973). The record supports the trial court's ruling that the error was not so prejudicial that it could not be eradicated except by declaring a mistrial. *See State v. Butler, supra.*

590

■    Instruction No. 15, to which Wright objects, is a correct statement of the law, *State v. Craig*, 82 Wn.2d 777, 514 P.2d 151 (1973); *State v. Wilson*, 26 Wn.2d 468, 174 P.2d 553 (1946). It was properly given to enable the State to argue its theory of the case to the jury if substantial evidence in the record warranted it.

> Each party is entitled, when the evidence warrants it, to have his theory of the case submitted to the jury under appropriate and requested instructions. *Allen v. Hart*, 32 Wn.2d 173, 201 P.2d 145 (1948).

*Elmer v. Vanderford*, 74 Wn.2d 546, 552, 445 P.2d 612 (1968).

Instructions are often inconsistent; they properly mirror the differences between the theories of the parties. Wright objects to instruction No. 15 because it suggests that he was an aggressor. It is the State's theory that Wright was the aggressor, and if there is substantial evidence in the record to support that theory, *Hayden v. Insurance Co. of North America*, 5 Wn. App. 710, 490 P.2d 454 (1971), the instruction was properly given.

Here the jury could find from the evidence that Wright and the deceased had had other affrays, that Wright detoured to confront the deceased, drew his weapon and fired. The fact that the deceased was armed coupled with Wright's testimony that the deceased was reaching for his weapon made it necessary to also give a self-defense instruction.

Instruction No. 13, to which error is assigned, though not a model instruction under the facts, is a correct statement of the law. *State v. Milbradt*, 68 Wn.2d 684, 415 P.2d 2 (1966). The instruction reads:

> While a person is not bound to retreat from a place where he has a right to remain and may lawfully repel a threatened assault, and to that end may use force enough to repel the assailant, yet he has no right to repel the threatened assault with naked hands by the use of a deadly weapon in a deadly manner, unless he honestly believes and has reasonable grounds to believe that he is in imminent danger of death or great bodily harm.

Wright attacks the instruction on the ground that there is no evidence in the record that the deceased threatened an assault "with naked hands." While the language "with naked hands" is unfortunate, it does not defeat the giving of the instruction. It was necessary to give an instruction so that the jury could resolve the factual issue raised by the conflicting evidence presented by the parties in support of their contentions concerning the actions of the deceased. After taking exception to this instruction, Wright might have submitted a more precise instruction on the issue; in its absence, we find no error in the instruction given.

Where parties present conflicting legal theories and support them with sufficient evidence, the court must instruct as to both theories, though only one can be adopted in rendering judgment. It is for the jury to determine which theory is supported by the evidence. Here the jury believed the facts which supported the State's position.

Wright makes two contentions concerning juror misconduct. He asserts that (1) jurors actively lied in concealing their racial prejudice during voir dire examination, *see Gordon v. Deer Park School Dist. 414*, 71 Wn.2d 119, 426 P.2d 824 (1967), and (2) he was denied a fair trial because jurors were racially prejudiced against him.

■ The affidavits in support of Wright's claim of concealed prejudice by three jurors do not sufficiently focus the issue for a definitive ruling on the question. Fairness by definition requires no less than the putting aside of prejudices during jury deliberations and honesty during voir dire. Nothing in the affidavits suggests that the jurors lied during voir dire or failed to put aside their alleged prejudices in reaching the verdict.

On voir dire, the juror Bryson was asked if he ever had an unpleasant experience with black people. He responded that he had had no more bad experiences with Blacks than with any other group. In the jury room, it is alleged that Mr. Bryson stated, "Yeah, I have had some real bad experiences with those people in that area of town." This state-

ment is not inconsistent with his answer during voir dire. Further, nothing in the affidavits indicates that his alleged prejudice affected his fairness in reaching the verdict. A similar analysis can be made of the other affidavits and answers on voir dire.

Whether certain jurors concealed their prejudice is a question of fact for the trial court, determination of the issue resting in its sound discretion.

> We are of the opinion that, as to each juror, a question of fact was presented for the trial court to determine, and the matter was one which rested largely in the discretion of the court; that on appeal the ruling of the trial court should not be disturbed, in the absence of a showing of an abuse of discretion. *State v. Rooney*, 2 Wn. (2d) 17, 97 P. (2d) 156, and cases therein cited.

*State v. Whetstone*, 30 Wn.2d 301, 346, 191 P.2d 818 (1948). The trial court resolved the issue against Wright's position. Our review of the record does not indicate that the trial court abused its discretion in its ruling. *State v. Rooney*, 2 Wn.2d 17, 97 P.2d 156 (1939).

Affirmed.

SWANSON, C.J., and CALLOW, J., concur.

Petition for rehearing denied March 13, 1975.

Review denied by Supreme Court April 28, 1975.