[No. 6655-44871-1.   Division One.   December 10, 1979.]

THE STATE OF WASHINGTON, *Respondent*, v. VAN OWEN SAFFORD, JR., *Appellant*.

784

*John R. Muenster* of *Seattle–King County Public Defender Association,* for appellant (counsel for appeal only).

*Norm Maleng, Prosecuting Attorney,* and *J. Robin Hunt, Deputy,* for respondent.

ANDERSEN, J.—

## FACTS OF CASE

The defendant appeals from a judgment and sentence entered on a jury verdict of guilty of murder in the second degree arising out of a death by stabbing. The appeal was taken directly to the State Supreme Court which transferred it to this court for determination.

At trial, the State presented evidence from which the jury was entitled to find that the stabbing occurred as follows.[1]

On the afternoon of September 19, 1976, the defendant, Van Owen Safford, Jr., age 25, started out to "find something to get into." He stopped by the homes of various friends, ended up at the apartment of one Raymond Brantley and suggested that everyone present head over to Volunteer Park for an "occurrence."

At the apartment, the victim, Warren Milligan, age 17, asked the defendant for money which the defendant owed him. This money was owed to the victim as the result of his sale of a bicycle to the defendant. The defendant had paid the victim $15 when he received the bicycle but still owed him $20 on it. The defendant responded that he did not

---

[1]Where expletives occur in quoted statements, they have been deleted.

have the money, then went into the apartment and got a knife. Coming down the stairs quickly, he jumped over the bannister and challenged, "Hey man, I'm not going to take no _____-whippings." He got within 2 1/2 feet of the victim when he was intercepted by Brantley and disarmed.

The defendant then told the victim that if he would follow the defendant to his father's house, he would give the victim his bicycle back. Unknown to the victim, the defendant had himself sold the bicycle several weeks earlier, and did not have it in his possession. The victim followed the defendant, accompanied by Clyde Fane, Anthony and Carel Burns.

Upon arrival at the residence of the defendant's father, the defendant ran inside the house and asked his father for his .357 Magnum pistol. When his father refused the request, the defendant got a butcher knife out of the kitchen. With knife in hand, he walked out of the house toward the victim shouting, "You're on my turf, now," or "I'm going to show you what you going to get now."

The victim was sitting on his bike on the far side of the street talking to Anthony Burns. He did not see the defendant approaching with the knife until one of the young people screamed, "He's got a knife." At this warning, the victim spun around, grabbed his bicycle and held it in front of him for protection. The defendant lunged and the knife went through the bicycle frame and pierced the victim's heart. The victim fell, still holding the bicycle. The knife never left the defendant's hand. As the victim fell to the ground, the knife was withdrawn at once. The defendant returned to his father's house and later reappeared on the porch, wiping his hands on a towel and said, "See, man, I don't take no _____ off no _____ _____."

The defendant was charged with first–degree murder. RCW 9A.32.030(1)(a). The jury was instructed on the elements of that crime and on the included offenses of murder in the second degree, RCW 9A.32.050(1)(a) and (b), and manslaughter in the first degree, RCW 9A.32.060. The defendant was found guilty of murder in the second degree.

This appeal presents six issues.

## ISSUES

ISSUE ONE. Did the trial court err in instructing the jury that it could convict the defendant of murder in the second degree if it found that he was committing the felony of assault in the second degree and caused the victim's death in the course of and in furtherance of such crime?

ISSUE TWO. Did the trial court err in not instructing the jury on self–defense?

ISSUE THREE. Did the trial court err in refusing to admit evidence that the victim and those around him at the time of his death were members of a gang which had a reputation for violence?

ISSUE FOUR. Did the trial court err in permitting a detective to testify that when the defendant described the stabbing, he did not deny intentionally doing it, and in also permitting the defendant to be cross–examined as to this?

ISSUE FIVE. Did the trial court err in refusing to permit a State's witness to be impeached by proof of a prior conviction which had been dismissed pursuant to the deferred sentence statute?

ISSUE SIX. Did the trial court commit reversible error when, after receiving a request from the jury for further instructions on the definition of assault, it sent a response to the jury without advising counsel?

## DECISION

ISSUE ONE.

CONCLUSION. For purposes of the second–degree felony murder statute, an assault does not merge into a resulting homicide; therefore, the trial court's instructions were correct.

Error is assigned to those of the trial court's instructions which permitted the defendant to be convicted under the felony murder section of the second–degree murder statute where, as here, the sole felony providing the basis for implementation of the felony murder doctrine was the assault upon the victim which was the direct cause of his

death. The excepted–to instructions are essentially in the language approved in WPIC 27.02, 27.03 and 35.10,[2] 11 Wash. Prac. (1977). They are in accordance with the statute defining the offense, RCW 9A.32.050, and defining assault in the second degree, RCW 9A.36.020.[3]

---

[2] "To convict the defendant Van Owen Safford, Jr., of the lesser crime of murder in the second degree, the state must prove to you beyond a reasonable doubt each of the following elements:

"(1) That on or about the 19th day of September, 1976, the defendant did stab one Warren L. Milligan, with a knife;

"(2) That Warren L. Milligan died as a result of the defendant's acts;

"(3) That the defendant *either*

"(a) acted with intent to cause the death of Warren L. Milligan; *or*

"(b) that the defendant was committing the felony of assault in the second degree and the defendant caused the death of Warren L. Milligan in the course of and in furtherance of such crime;

"(4) That the acts occurred in King County, Washington.

"If you find from the evidence admitted in this case that the state has proved beyond a reasonable doubt elements (1), (2), (4) and either (3)(a) or (3)(b), then it is your duty to return a verdict of guilty of murder in the second degree.

"I expressly point out that before you can return a verdict of guilty, all twelve of you must agree that element (3)(a) has been proven, or that all twelve of you must agree that element (3)(b) has been proven, or both.

"On the other hand, if after weighing all the evidence and lack of evidence you then entertain a reasonable doubt as to the establishment of any one of the foregoing elements, then it will be your duty to return a verdict of not guilty." Court's instruction No. 8.

"A person also commits the crime of murder in the second degree when he commits or attempts to commit assault in the second degree and in the course of and in the furtherance of such crime the defendant causes the death of a person." Court's instruction No. 10.

"A person commits the crime of assault in the second degree when he shall either:

"(1) Knowingly inflict grievous bodily injury upon another with or without a weapon; or

"(2) Knowingly assault another with a weapon or other instrument or thing likely to produce bodily harm." Court's instruction No. 11.

[3] "Murder in the second degree. (1) A person is guilty of murder in the second degree when:

"(a) With intent to cause the death of another person but without premeditation, he causes the death of such person or of a third person; or

"(b) He *commits or attempts to commit* any felony other than those enumerated in RCW 9A.32.030(1)(c), and, in the course of and in furtherance of such crime or in immediate flight therefrom, he, or another participant, causes the

■ It is the defendant's argument that the merger doctrine which pertains in a majority of jurisdictions should apply in this state, and if so applied, would preclude use of the felony murder statute except where the underlying felony was in fact independent of the homicide. *See* Annot., 40 A.L.R.3d 1341 (1971). "While it may be that the felony murder statute is harsh, and while it does relieve the prosecution from the burden of proving intent to commit murder, it is the law of this state." *State v. Thompson,* 88 Wn.2d 13, 17, 558 P.2d 202 (1977). *Accord, State v. Wanrow,* 91 Wn.2d 301, 588 P.2d 1320 (1978); *State v. Roberts,* 88 Wn.2d 337, 344 n.4, 562 P.2d 1259 (1977); *State v. Harris,* 69 Wn.2d 928, 931–33, 421 P.2d 662 (1966). The defendant's principal contentions in this regard are disposed of by *Thompson* and *Wanrow*; the remainder do not

death of a person other than one of the participants; except that in any prosecution under this subdivision (1)(b) in which the defendant was not the only participant in the underlying crime, if established by the defendant by a preponderance of the evidence, it is a defense that the defendant:

"(i) Did not commit the homicidal act or in any way solicit, request, command, importune, cause, or aid the commission thereof; and

"(ii) Was not armed with a deadly weapon, or any instrument, article, or substance readily capable of causing death or serious physical injury; and

"(iii) Had no reasonable grounds to believe that any other participant was armed with such a weapon, instrument, article, or substance; and

"(iv) Had no reasonable grounds to believe that any other participant intended to engage in conduct likely to result in death or serious physical injury.

"(2) Murder in the second degree is a class A felony." RCW 9A.32.050.

"Assault in the second degree. (1) Every person who, under circumstances not amounting to assault in the first degree shall be guilty of assault in the second degree when he:

"(a) With intent to injure, shall unlawfully administer to or cause to be taken by another, poison or any other destructive or noxious thing, or any drug or medicine the use of which is dangerous to life or health; or

"(b) Shall knowingly inflict grievous bodily harm upon another with or without a weapon; or

"(c) Shall knowingly assault another with a weapon or other instrument or thing likely to produce bodily harm; or

"(d) Shall knowingly assault another with intent to commit a felony; or

"(e) With criminal negligence, shall cause physical injury to another person by means of a weapon or other instrument or thing likely to produce bodily harm.

"(2) Assault in the second degree is a class B felony." RCW 9A.36.020.

persuade us that this rule, which has recently been restated by the State Supreme Court, is improper. The trial court did not err in instructing the jury on felony murder in the second degree.

ISSUE TWO.

CONCLUSION. The evidence did not warrant instructing on self–defense; therefore, the trial court correctly refused to do so.

The trial court instructed the jury on the defendant's theory of excusable homicide, that is, that a homicide is excusable when caused by accident or misfortune.[4] It did not, however, instruct on the theory of justifiable homicide or self–defense and to this the defendant assigns error.

■ A defendant is entitled to have his theory of the case submitted to the jury under appropriate instructions when the evidence warrants it. *Elmer v. Vanderford,* 74 Wn.2d 546, 552, 445 P.2d 612 (1968); *State v. Wright,* 12 Wn. App. 585, 590, 530 P.2d 704 (1975). However, there must be substantial evidence in the record to sustain a theory on which instructions are given. *State v. Elder,* 70 Wn.2d 414, 419, 423 P.2d 533 (1967); *Bean v. Stephens,* 13 Wn. App. 364, 369, 534 P.2d 1047 (1975). Therefore, the primary question in connection with this issue is whether there is substantial evidence in the record to sustain the theory of self–defense. The trial court held there was not. We agree.

It is uncontroverted that upon reaching his father's house the defendant was angry. He went upstairs and asked his

---

[4] "You are instructed that a statute of the state of Washington provides as follows:

'Homicide is excusable when committed by accident or misfortune in doing any lawful act by lawful means, with ordinary caution and without any unlawful intent.'

"Accordingly, before a homicide can be held excusable, four elements must be present: first, the homicide must have been committed by accident or misfortune; second, it must have occurred in the doing of a lawful act, by lawful means; third, ordinary caution must have been observed by the person responsible for the killing; and fourth, this person must have acted without any unlawful intent. If any one of these four elements be eliminated from the factual situation, the homicide is not within the statutory definition." Court's instruction No. 17.

father for a gun but did not get one. The defendant then went into the kitchen, got a butcher knife and went back outside.

The victim was sitting on his bicycle or standing near it on the far side of the street talking with another young man. The others present were either riding their bicycles in the street or sitting on their bicycles. The defendant walked through the yard and across the street with the butcher knife in his hand and approached the victim. As he did so, one of the others screamed that the defendant had a knife. The victim turned and raised his bike in front of him. The knife went through the bike and into the victim's chest. The defendant then went back into his father's house.

█ None of the foregoing is controverted. So far as the defendant's own testimony is concerned, he repeatedly testified that the stabbing was an accident caused by the victim coming toward him, holding his bicycle in front of him and tripping. He also repeatedly testified that he did not intend to stab the victim. As one text explains the law of self–defense in the State of Washington, "[t]he only burden on the defendant is that there be enough evidence to take the issue of self–defense to the jury." 11 Wash. Prac. 102 (1977). There was no evidence upon which a claim of self–defense could be based; therefore, the trial court did not err by not instructing on it. *State v. Biondic,* 47 Wn.2d 593, 594–95, 288 P.2d 845 (1955); *State v. Barnhart,* 73 Wn.2d 936, 940–41, 442 P.2d 959 (1968); *State v. Roberts, supra* at 346.

ISSUE THREE.

CONCLUSION. The trial court did not abuse its discretion in limiting the testimony as it did. *State v. Adamo,* 120 Wash. 268, 269–70, 207 P. 7 (1922).

█ The defendant argues that it was error for the trial court to refuse to admit evidence that the victim and those around him at the time of his death were members of a gang with a reputation for violence. As to that, the trial court's ruling is instructive:

THE COURT: As I indicated before, and I think I'm right, we're putting the cart before the horse. And there's no point in having testimony of witnesses as to reputation of the deceased, unknown to the defendant, brought in and then have this parade of witnesses and we find out that there is no such testimony. I'm afraid we're going to have to proceed in some order. I'm not telling you what order to call your witnesses, but I am saying until such time as the Court is convinced that there is a legitimate issue of fact on the issue of self–defense, when that point comes then I will permit the reputation under *State v. Adamo,* but you are going to have to establish the defense through eyewitnesses or some other way before I am going to put it in.

Some reputation evidence of this sort was, however, introduced. The trial court did not abuse its discretion to the extent that it limited such testimony since no evidence of self–defense was ever presented.

ISSUE FOUR.

CONCLUSION. The defendant waived his right to remain silent and, having done so, it was not error to permit the State to produce evidence that the defendant did not deny intending to stab the victim when asked about it.

After the defendant's arrest, he was advised of his *Miranda*[5] rights and waived them in writing. At trial a detective testified that following this, and following the defendant voluntarily describing the stabbing, the defendant was evasive in answering whether or not the stabbing was intentional.[6] The defendant later took the stand and also was cross–examined as to this. He assigns error and

---

[5]*Miranda v. Arizona,* 384 U.S. 436, 16 L. Ed. 2d 694, 86 S. Ct. 1602, 10 A.L.R.3d 974 (1966).

[6]The detective testified: "After Mr. Safford described to me how, in his words, the incident, the stabbing incident happened, I specifically asked him if he had intentionally stabbed Warren. His answer to that was 'That I have never done anything like this before. I have never been in trouble before.' I asked him to elaborate a little bit and, again, if he could answer the question 'Did you specifically or did you intentionally stab the victim?' He again gave the same answer, that he had never done anything like this before, that he had never been in trouble before."

argues that it was improper to allow the use of his silence against him for impeachment purposes after he had received his *Miranda* warnings, citing *Doyle v. Ohio,* 426 U.S. 610, 49 L. Ed. 2d 91, 96 S. Ct. 2240 (1976).

██ The defendant failed to preserve this error for appellate review by objecting. *State v. Boast,* 87 Wn.2d 447, 451, 553 P.2d 1322 (1976). Furthermore, *Doyle v. Ohio, supra,* is not applicable where a defendant waives his right to remain silent as this defendant did. *State v. Young,* 89 Wn.2d 613, 620-21, 574 P.2d 1171 (1978).

ISSUE FIVE.

CONCLUSION. The trial court did not err in refusing to permit a prior conviction of a witness to be used to impeach him when the charge had been dismissed pursuant to the deferred sentence statute, RCW 9.95.240.

██ At the time this case was tried, there appeared to be a conflict in the Court of Appeals as to whether a witness could be impeached by the admission of evidence of a prior conviction which was subsequently dismissed. In *State v. Johnson,* 12 Wn. App. 548, 530 P.2d 662 (1975), this Division held that the trial court erred in refusing to allow a witness to be impeached on the basis of a prior conviction which had been dismissed. In *State v. Walker,* 14 Wn. App. 348, 541 P.2d 1237 (1975), Division Two addressed this question and concluded that in enacting RCW 9.95.240 the legislature intended all adverse consequences of a dismissed conviction, including impeachment, to be expunged, with one exception not applicable here. Then in *Blevins v. Department of Labor & Indus.,* 21 Wn. App. 366, 370, 584 P.2d 992 (1978), which was decided following this trial, we specifically overruled the holding in *State v. Johnson, supra.* Therefore, the witness' prior conviction, which had been dismissed pursuant to RCW 9.95.240, could not be used to impeach the witness. *See also* ER 609(c).

ISSUE SIX.

CONCLUSION. The trial court did not commit reversible error when it merely responded negatively to the jury's request for clarification of instructions.

Sometime after the jury retired to deliberate, it sent a note to the court requesting "a legal or judicial definition of assault." The trial judge was satisfied that the instructions properly and adequately defined assault and therefore wrote on the note, "Read the instructions," signed his name and returned the note to the jury. The defendant argues that this violated his right to be present in person or by counsel at all proceedings from the time the jury is empaneled until it is discharged after rendering its verdict and cites *Rogers v. United States,* 422 U.S. 35, 45 L. Ed. 2d 1, 95 S. Ct. 2091 (1975). The prosecutor's brief argues that even though such action is not to be commended, it was not reversible error because the court's message to the jury conveyed no affirmative information.

After a jury retires for deliberation, if it desires to be informed on any point of law, the judge may require the bailiff to conduct the jury into court. If the jury is brought into court, the information requested, if given, shall, of course, be given in the presence of, or after notice to, the parties or their counsel. *See* CrR 3.4(a). Any additional instructions upon any point of law should also be given in writing. CrR 6.15(f)(1).

The foregoing principles were not violated here. Since the trial court's response to the jury, "Read the instructions," was negative in character and conveyed no affirmative information, no prejudice resulted and it was not reversible error. *State v. Colson,* 9 Wn.2d 424, 426–28, 115 P.2d 677 (1941); *State v. Lewis,* 37 Wn.2d 540, 547–48, 225 P.2d 428 (1950); *State v. Johnson,* 56 Wn.2d 700, 709, 355 P.2d 13 (1960), *cert. denied,* 366 U.S. 934, 6 L. Ed. 2d 846, 81 S. Ct. 1658 (1961). *See also State v. Robinson,* 84 Wn.2d 42, 47 n.2, 523 P.2d 1192 (1974).

Affirmed.

CALLOW, C.J., and WILLIAMS, J., concur.

Reconsideration denied February 29, 1980.

Review denied by Supreme Court May 9, 1980.