IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | |
| | ) | No. 36865-3-III |
| Respondent, | ) | (consolidated with |
| | ) | No. 37371-1-III) |
| v. | ) | |
| | ) | |
| JOHN CHRISTOPHER FOX, | ) | |
| | ) | |
| Appellant. | ) | UNPUBLISHED OPINION |
| | ) | |
| | ) | |
| In the Matter of the Personal Restraint of | ) | |
| | ) | |
| JOHN CHRISTOPHER FOX, | ) | |
| | ) | |
| Petitioner. | ) | |

KORSMO, J.P.T.[1] — John Fox challenges, by appeal and personal restraint petition
(PRP), convictions for first degree burglary, second degree assault, and felony violation
of a protection order. His appointed counsel filed a motion to withdraw in accordance
with *Anders v. California*, 386 U.S. 738, 87 S. Ct. 1396, 18 L. Ed. 2d 493 (1967). We
affirm the convictions and dismiss the petition.

---

[1] Judge Kevin M. Korsmo was a member of the Court of Appeals at the time
argument was held on this matter. He is now serving as a judge pro tempore of the court
pursuant to RCW 2.06.150.

FACTS

This case arises from a failed relationship. On the date charged, Mr. Fox broke into the home of the protected person, TM, who fled to the street. Fox grabbed a kitchen knife and followed her outside, yelling menacingly. Law enforcement was called, Mr. Fox was apprehended, and the noted charges filed.

Counsel was assigned for Mr. Fox's first appearance; the attorney suggested the court order a competency evaluation. A psychologist found Mr. Fox competent to stand trial and the court entered an order to that effect. Later, Mr. Fox asked to represent himself, expressing distrust for the court system. After a colloquy, the court accepted his waiver of counsel. A few months later, Mr. Fox asked that standby counsel take the case over and the court reappointed counsel.

Defense counsel obtained a continuance to prepare. Two weeks later, Mr. Fox again asked to represent himself. After a colloquy, the court again accepted a waiver of counsel. Mr. Fox then represented himself at trial. The trial court granted the State's motion in limine to exclude a diminished capacity defense since no expert witness had been retained. During deliberations, the jury sent out a question concerning "intent," but Mr. Fox declined to return to the courtroom. The court responded to the jury in writing, advising that there would be no further instructions. The jury found Mr. Fox guilty of burglary, but was unable to decide the other charges.

A second jury trial was held with Mr. Fox again representing himself. Mr. Fox absented himself from the trial after the State rested its case, complaining that his medication prevented him from proceeding. The court granted a one hour recess, but then Mr. Fox continued to refuse to proceed. The trial court, believed Mr. Fox was playing games, found that Mr. Fox was oriented and responsive to questions, and denied a request for a mistrial. Acknowledging that he was waiving his right to be present, Mr. Fox again left the courtroom. The second jury convicted him of assault and felony violation of a protection order, each while armed with a deadly weapon.

At sentencing, the defense requested that the three offenses be treated as one for scoring purposes. The trial court declined and imposed concurrent standard range terms. Mr. Fox then timely appealed to this court. His appointed counsel filed a motion to withdraw in accordance with *Anders*. Meanwhile, Mr. Fox filed a CrR 7.8 motion for resentencing, which the trial court transferred to this court for consideration as a PRP. Our commissioner then consolidated the two matters and referred them to a panel. A panel then considered the cases without conducting argument.

ANALYSIS

*APPEAL*

Appellate counsel ably identified every contested issue in the case and suggested them as potential issues to which error could properly be assigned. The prosecutor thoroughly and concisely explained why each issue was without merit. In light of the

3

nature of the briefing, and with the facts well known to the parties, our answers to the potential assignments will be rather summary.

*Competency to Stand Trial.* Appellate counsel suggests that Mr. Fox was not competent to stand trial. RCW 10.77.060. A person is competent to stand trial if s/he both (1) understands the nature of the charges filed and (2) is able to assist in the defense. *In re Pers. Restraint of Fleming*, 142 Wn.2d 853, 861-862, 16 P.3d 610 (2001). Determinations of competence to stand trial are reviewed for abuse of discretion. *State v. Ortiz*, 104 Wn.2d 479, 482, 706 P.2d 1069 (1985). Deference is given to the trial court's determination due to the court's opportunity to observe the defendant's behavior and demeanor. *State v. Hanson*, 20 Wn. App. 579, 582, 581 P.2d 589 (1978). Discretion is abused when it is exercised on untenable grounds or for untenable reasons. *State ex rel. Carroll v. Junker*, 79 Wn.2d 12, 26, 482 P.2d 775 (1971).

There was no abuse of discretion here. While he had a history of mental health issues, there was no evidence that Mr. Fox did not understand the nature of the case against him or was unable to assist in his defense. The expert's report found that he was competent to stand trial. Mr. Fox personally has never claimed otherwise. This contention is without merit.

*Self-Representation.* Counsel next suggests that the trial court abused its discretion in permitting Mr. Fox to waive counsel. The trial court properly honored Mr. Fox's rights under the constitution.

4

Both the United States and Washington Constitutions permit an accused to waive the right to counsel and engage in self-representation. *Faretta v. California*, 422 U.S. 806, 95 S. Ct. 2525, 45 L. Ed. 2d 562 (1975); *State v. Madsen*, 168 Wn.2d 496, 503, 229 P.3d 714 (2010) (citing WASH. CONST. art. I, § 22). The right to self-representation is implicit in the Sixth Amendment, but explicit in art. I, § 22. Deprivation of this right is considered to be structural error. *Neder v. United States*, 527 U.S. 1, 8, 119 S. Ct. 1827, 144 L. Ed. 2d 35 (1999) (listing instances of structural error). In order to exercise this right, the criminal defendant must knowingly and intelligently waive the right to counsel after advice about the dangers and disadvantages of self-representation. *Faretta*, 422 U.S. at 835. A thorough colloquy on the record is the preferred method of ensuring an intelligent waiver of the right to counsel. *City of Bellevue v. Acrey*, 103 Wn.2d 203, 211, 691 P.2d 957 (1984). A trial court's decision to permit self-representation is reviewed for abuse of discretion. *State v. Curry*, 191 Wn.2d 475, 483, 423 P.3d 179 (2018).

The record here reflects thorough colloquies on two occasions as well as the exercise of the right to switch back to counsel. Mr. Fox clearly knew what he was doing and undertook self-representation twice. In light of the multiple colloquies, the trial court had very tenable grounds for allowing self-representation.

*Time for Trial*. Counsel also suggests that the trial court erred in granting a trial continuance over the objection of the defendant. This argument is easily met. Unless a defendant objects to a new trial date and files a timely motion to compel a different trial

date, the claim is waived. CrR 3.3(d)(3). That is the situation here. Mr. Fox never filed a challenge and request for a new trial date. Accordingly, the time for trial rule was not violated by the continuance.

*Exclusion of Diminished Capacity Defense.* Counsel next notes the trial court's exclusion of a diminished capacity defense. Again, this argument is without merit.

A defendant is entitled to a diminished capacity instruction if (1) the crime charged includes a particular mental state as an element, (2) the defendant presents evidence of a mental disorder, and (3) expert testimony logically and reasonably connects the defendant's alleged mental condition with the asserted inability to form the mental state required for the crime charged. *State v. Atsbeha*, 142 Wn.2d 904, 914, 921, 16 P.3d 626 (2001). The testimony of an expert witness is necessary to present a diminished capacity defense. *State v. Stumpf*, 64 Wn. App. 522, 526, 827 P.2d 294 (1992).

Here, the trial court prohibited the diminished capacity defense at the State's request because the defendant repeatedly failed to obtain an evaluation and an expert witness necessary to provide a foundation for the defense. In the absence of expert support, there is no basis for a diminished capacity defense. *Stumpf*, 64 Wn. App. 522.

*Prosecutorial Misconduct.* Mr. Fox alleged at the second trial that the prosecutor had committed misconduct in opening statement by urging jurors to "send a message" to Mr. Fox. The court denied the motion, stating that the prosecutor made no such statement. Report of Proceedings (RP) (May 7, 2019) at 63.

6

We review a trial court's ruling on a motion to declare a mistrial for abuse of discretion. *State v. Weber*, 99 Wn.2d 158, 166, 659 P.2d 1102 (1983). "The question is not whether this court would have decided otherwise in the first instance, but whether the trial judge was justified in reaching his conclusion." *State v. Taylor*, 60 Wn.2d 32, 42, 371 P.2d 617 (1962). Since there was no factual basis for the request, the trial court had very tenable grounds for denying the motion.

*Defendant's Presence.* Mr. Fox stopped taking part in each trial as they reached the end. Appellate counsel suggests that his right to be present might have been violated. However, the trial court correctly concluded that Mr. Fox voluntarily absented himself in each instance.

A defendant has a right to appear at his trial. WASH. CONST. art. I, § 2. A defendant may waive this right and the trial court's decision to proceed with the trial in the defendant's absence is reviewed for abuse of discretion. *State v. Thurlby*, 184 Wn.2d 618, 624-625, 359 P.3d 793 (2015). When a defendant fails to appear for trial, the trial court must ascertain whether the defendant's absence is voluntary. *State v. Thomson*, 123 Wn.2d 877, 881, 872 P.2d 1097 (1994). Our courts traditionally perform a three step analysis that includes:

> (1) [make] sufficient inquiry into the circumstances of a defendant's disappearance to justify a finding whether the absence was voluntary,
> (2) [make] a preliminary finding of voluntariness (when justified), and
> (3) [afford] the defendant an adequate opportunity to explain his absence when he is returned to custody and before sentence is imposed.

7

*Id*. The court must consider all reasonable presumptions that the defendant did not voluntarily waive his rights. *State v. Garza*, 150 Wn.2d 360, 367, 77 P.3d 347 (2003). While useful for confirming voluntariness when a defendant inexplicably fails to appear, this framework is not essential if the defendant informs the court he wishes to absent himself. *State v. Davis*, 6 Wn. App. 2d 43, 55, 429 P.3d 534 (2018). The third analytical prong is primarily meant to ensure the defendant an opportunity to explain the absence to the court. *Thurlby*, 184 Wn.2d at 629.

Mr. Fox knowingly and intelligently chose to depart trial (or not return) rather than participate and informed the court of those wishes. The absences were voluntary. *Davis*, 6 Wn. App. 2d 43. The trial court did not err in continuing without him.

*Mistrial Motion.* Counsel also suggests that the trial court erred in denying Mr. Fox's motion for a mistrial near the conclusion of the second trial. When the State rested, Mr. Fox stated that his medication prevented him from going forward. After a recess, the court ultimately concluded that Mr. Fox was playing games and declined to stop the trial. Mr. Fox then left the courtroom for the duration of the trial.

The court again did not abuse its discretion by denying the mistrial motion. A voluntary decision to stop taking part in his trial is not a basis for declaring a mistrial. The court's reasoning was quite tenable. There was no error.

*Jury Question.* Counsel next suggests that the trial court erroneously sent back a response to the jury in the first trial without first consulting the parties in violation of CrR 6.15(f)(1). In light of Mr. Fox's refusal to take part in the trial, we are uncertain whether the trial court erred by declining to have communication solely with the prosecution. We are certain that any error was harmless.

Typically, the court must consult with the parties before answering a jury question. CrR 6.15(f)(1); *State v. Jasper*, 174 Wn.2d 96, 121, 271 P.3d 876 (2012). A "negative" communication between the court and the jury is one that conveys no information. *State v. Safford*, 24 Wn. App. 783, 794, 604 P.2d 980 (1979) (citing cases). It long has been settled that a negative communication to the jury is harmless error. *State v. Colson*, 9 Wn.2d 424, 426-427, 115 P.2d 677 (1941); *State v. Russell*, 25 Wn. App. 933, 948, 611 P.2d 1320 (1980); *Safford*, 24 Wn. App. at 794.

The court's answer to the jury inquiry was a "negative" communication that merely informed the jury that no further instruction would be forthcoming. If there was error in so responding in the absence of the parties, the error was absolutely harmless. *Colson*, 9 Wn.2d 424; *Russell*, 25 Wn. App. 933; *Safford*, 24 Wn. App. 783.

*Scoring.* On multiple theories, some of which are repeated in the PRP, appellant argues that his sentence was wrongly calculated. None of the claims have merit.

Double jeopardy is violated when, among other things, a person is convicted of multiple crimes for the same behavior in the absence of legislative authorization for the

multiple punishments. *State v. Leming*, 133 Wn. App. 875, 881-882, 138 P.3d 1095 (2006), *review denied*, 160 Wn.2d 1006 (2007). The merger doctrine, similarly, prohibits multiple convictions when the degree of one offense is raised by another crime. *Id.* at 890.

Neither of these doctrines are implicated here. Merger has no play because none of the offenses were elevated by any of the other crimes. Double jeopardy is not implicated because the crimes do not share any elements in common. The protection order charge was predicated on the commission of prior protection order violations, not any of the contemporaneous offenses. The burglary was committed by entering the house while armed with a deadly weapon; the assault charge occurred outside the house when Mr. Fox threatened TM with a knife. Moreover, the burglary antimerger statute shows express legislative intent to punish burglary in addition to any related crimes. RCW 9A.52.050.

Mr. Fox also suggests that the offenses constituted the same criminal conduct, RCW 9.94A.589(1). They did not. When imposing sentence under that subsection, courts are required to include each other current offense in the offender score unless one or more of those offenses constitute the same criminal conduct, in which case they shall be "counted as one crime." The statute then defines that particular exception to the scoring rule: "'Same criminal conduct,' as used in this subsection, means two or more crimes that require the same criminal intent, are committed at the same time and place, and involve the same victim." *Id*.

10

It is the defendant's burden to establish that offenses constitute the same criminal conduct. *State v. Graciano*, 176 Wn.2d 531, 540-541, 295 P.3d 219 (2013). The trial court's same criminal conduct ruling is reviewed for abuse of discretion because it involves a factual inquiry. *Id.* at 535-536, 541. In addition, the burglary antimerger statute also gives trial courts the authority to treat burglary offenses separately even when the underlying crime would otherwise constitute the same criminal conduct. *State v. Lessley*, 118 Wn.2d 773, 781-782, 827 P.2d 996 (1992).

These offenses did not occur at quite the same time, nor did they share the same criminal intent. The burglary was completed when Mr. Fox unlawfully entered the house, the protection order violation was completed when he contacted TM, and the assault occurred afterward when he chased TM down the street. The trial court considered the sentencing argument and rejected the contention. The court did not err. With the antimerger statute permitting the court to treat the burglary separately from the other offenses, the only remaining question is whether the protection order and assault crimes were the same conduct. Under the facts of this case, as charged, they were not.

Lastly, the contention that the weapons enhancements are improper because they do not overlap is without merit. The enhancements were required to be served consecutively to each other. RCW 9.94A.533(4).

The appeal is without merit. Counsel's motion to withdraw is granted.

11

*PERSONAL RESTRAINT PETITION*

The PRP argues that the offender score was wrongly calculated, a presentence report was not completed, and that domestic violence enhancements were applied. The last two allegations are contrary to the record. The presentence report was completed and, according to the record, shared with Mr. Fox. RP (June 7, 2019) at 226-228. No domestic violence findings were made, nor was the sentence enhanced in such a manner.

To prevail on a PRP, a petitioner must show there is constitutional error that caused substantial actual prejudice or a nonconstitutional error that resulted in a fundamental defect constituting a complete miscarriage of justice. *In re Pers. Restraint of Woods*, 154 Wn.2d 400, 409, 114 P.3d 607 (2005). It is the petitioner's burden to establish this "threshold requirement." *Id.* To do so, a PRP must present competent evidence in support of its claims. *In re Pers. Restraint of Rice*, 118 Wn.2d 876, 885-886, 828 P.2d 1086, *cert. denied*, 506 U.S. 958 (1992). If the facts alleged would potentially entitle the petitioner to relief, a reference hearing may be ordered to resolve the factual allegations. *Id.* at 886-887.

This PRP does not demonstrate any error. The offender score for both the burglary and assault convictions was five points, while the score on the protection order count was four points. The defendant had two points of prior criminal history on each of the current charges due to past convictions for felony harassment and second degree possession of stolen property. When scoring both the assault and burglary convictions,

12

No. 36865-3-III (consolidated with 37371-1-III)
*State v. Fox*; *Pers. Restraint of Fox*

the trial court correctly added two points for the other violent offense and one point for the protection order violation, resulting in the score of five points each. RCW 9.94A.525, .533. With respect to the protection order charge, each of the other two offenses only counted a single point, resulting in the offender score of four. *Id.*

The PRP is without merit. The convictions are affirmed and the petition is dismissed.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

_____
Korsmo, J.P.T.

WE CONCUR:

_____
Fearing, J.

_____
Lawrence-Berrey, J.

13