[No. 2144-2.    Division Two.    August 9, 1976.]

THE STATE OF WASHINGTON, *Respondent*, v. JOHN L. BATTLE, JR., *Appellant*.

*William Thomas McPhee* (of *McPhee, Pope & Phillips*), for appellant.

*Patrick D. Sutherland, Prosecuting Attorney*, and *George Darkenwald, Deputy*, for respondent.

PEARSON, J.—The defendant, John L. Battle, Jr., appeals from his conviction on one count of grand larceny and one count of attempted grand larceny. On appeal he raises two issues: first, whether the State was erroneously permitted to introduce evidence of defendant's involvement in other criminal activity; and second, whether the trial court unduly restricted defendant's cross-examination of the State's primary witness. For the reasons stated below, we find no error and affirm the conviction.

The crimes for which defendant was convicted were apparently part of a "cashback" bunco scheme which involved several other persons, none of whom were prosecuted in this action. The scheme was a relatively simple one in which bank savings accounts were opened with small deposits. A few days later, the depositor would return with a bogus business check, deposit it in the new account, and then withdraw all but a small portion of the deposit as a "cashback."

The State's case was based primarily on the testimony of Mona Jacob, an admitted accomplice in the crimes out of which defendant's conviction arose. At the time of trial she had entered a plea of guilty to charges relating to her participation in these crimes and was awaiting sentencing. Ms. Jacob testified that on December 12, 1974, defendant drove her to several Olympia area banks where, at his direction, she opened savings accounts in the name of Cathy Collier, using false identification supplied by the defendant. Several days later, in the Portland, Oregon apartment of Eugene Franklin, Ms. Jacob witnessed defendant prepare a number of checks on the account of "E and F Roofing Company," a nonexistent enterprise. The checks were drawn on a Portland branch of First State Bank of Oregon, were payable to Cathy Collier, and were signed by Eugene Franklin. On December 20, 1974, Jacob and defendant returned to the Bank of Olympia in Olympia. While defendant waited in the car, Ms. Jacob, using one of the passbooks acquired on December 12 and an E and F Roofing check supplied by the defendant, deposited the $253.46 check and withdrew $233.46, which she gave to defendant.

After Ms. Jacob left, employees at the bank checked with First State Bank of Oregon and were told the E and F Roofing check was worthless. They immediately alerted other banks in the Olympia area to be on the lookout for a woman cashing E and F checks and that she might be accompanied by a black male.[1]

In the meantime, defendant drove Ms. Jacob to the South Sound National Bank in Lacey where Ms. Jacob attempted to cash another E and F Roofing check while the defendant waited outside in his car. Alert bank employees, having just received the Bank of Olympia call, detained her until the police arrived. By this time defendant had left the scene, but was seen driving in the Olympia-Lacey vicinity shortly after Ms. Jacob's arrest. He was later apprehended and convicted of the crimes from which he now appeals.

Defendant assigns error to the admission at trial of certain testimony and exhibits relating to criminal activity for which he had neither been charged nor convicted. In support of his argument he contends he was prejudiced in three particulars. First, Mr. Quinnan Welch, manager of the First State Bank of Oregon branch where the E and F Roofing account was opened, was permitted to testify that 67 worthless checks, totaling more than $11,900, had been written on the E and F Roofing account. The checks were made to the order of 12 different payees, including Cathy Collier, and some of them had been presented subsequent to defendant's incarceration. Second, Mona Jacob was permitted to testify that she and the defendant intended to cash additional E and F Roofing checks in the Tacoma area. Third, 11 checks found in the parking lot outside the South Sound National Bank, where Ms. Jacob was arrested, were admitted into evidence. None of this evidence, according to the defendant, had any relation to the crimes charged, it merely served to bolster Mona Jacob's testimony, and was unduly inflammatory.

A defendant may be tried only for the offenses charged, *State v. Hess*, 86 Wn.2d 51, 541 P.2d 1222 (1975),

---

[1]The defendant is black.

*State v. Mack*, 80 Wn.2d 19, 490 P.2d 1303 (1971), and generally, prior acts of misconduct are inadmissible as evidence of the likelihood that he committed the crimes charged. *State v. Hess, supra; State v. Mack, supra; State v. Dinges*, 48 Wn.2d 152, 292 P.2d 361 (1956); *State v. Goebel*, 40 Wn.2d 18, 240 P.2d 251 (1952); *State v. Goebel*, 36 Wn.2d 367, 218 P.2d 300 (1950). An exception to this rule exists where such evidence is necessary to establish intent, common scheme or plan, identity, motive, absence of accident or mistake, and, if it is relevant and necessary to prove an essential ingredient of the crime charged. *State v. Hess, supra; State v. Mack, supra; State v. Goebel*, 36 Wn.2d 367, 218 P.2d 300 (1950). Further, the mere fact that evidence of misconduct is offered to establish one of these elements does not necessarily make it admissible. It must also be relevant. *State v. Eichman*, 69 Wn.2d 327, 418 P.2d 418 (1966). We think the State met this burden and that the evidence was properly admitted.

■ Part of defendant's argument focuses on Mr. Welch's testimony that worthless checks were written on the E and F Roofing account prior to and after his incarceration and prior to the admission of the 11 checks found at the time of Jacob's arrest. He contends this evidence was irrelevant and prejudicial since no evidence was introduced "connecting" him with these checks. We disagree. Mere similarity between other criminal misconduct and the crimes charged would not in itself have justified the admission of this evidence. *State v. Calhoun*, 13 Wn. App. 644, 536 P.2d 668 (1975). *See State v. Morris*, 70 Wn.2d 27, 422 P.2d 27 (1966); *State v. Gottfreedson*, 24 Wash. 398, 64 P. 523 (1901); *State v. Hennings*, 3 Wn. App. 483, 475 P.2d 926 (1970). But where, as here, a distinctive means was employed in committing the other offenses and the crimes charged, *State v. Craddick*, 61 Wash. 425, 112 P. 491 (1911), or where the criminal acts were inseparable from a whole criminal scheme, *see State v. Niblack*, 74 Wn.2d 200, 443 P.2d 809 (1968), *State v. Priest*, 132 Wash. 580, 232 P. 353 (1925), evidence of the other criminal misconduct is rele-

vant and admissible. The two E and F Roofing checks upon which defendant's conviction was based, and the evidence of other worthless E and F checks admitted over defendant's objection, were clearly related by distinctive and identical characteristics. The name "E and F Roofing Company" was imprinted on each check, as was the same fictitious address. Each check was drawn on the same account in First State Bank of Oregon. Each check was signed by Eugene Franklin. Under the authorities cited above, this evidence was admissible to show that all the checks were issued as part of one, large, inseparable criminal scheme. All the checks were issued at or near the same time as those on which defendant's prosecution was based. This was an additional circumstance establishing the existence of a general scheme of operation, its modus operandi, *State v. Russell*, 70 Wn.2d 552, 424 P.2d 639 (1967). The evidence also tended to establish defendant's knowledge that the checks were worthless, would not be paid when presented, and thus his intent to defraud, an essential element of the State's case. *See State v. Scherer*, 77 Wn.2d 345, 462 P.2d 549 (1969); *State v. Jeane*, 35 Wn.2d 423, 213 P.2d 633 (1950); *State v. Bradley*, 190 Wash. 538, 69 P.2d 819 (1937); *State v. Sims*, 4 Wn. App. 188, 480 P.2d 228 (1971).

Further, the evidence was also corroborative of Mona Jacob's testimony describing the scheme and defendant's participation in it, and was admissible on this ground. *See State v. Sims, supra*; *State v. Whalon*, 1 Wn. App. 785, 464 P.2d 730 (1970).

■ Mona Jacob's testimony that she and the defendant had planned to pass other bad checks in Tacoma was also properly admitted. Her testimony merely indicated a continuation of the crimes with which defendant was charged and was relevant, like the evidence discussed above, to show a common scheme, modus operandi, and an intent to defraud.

■ Defendant's contention that evidence of other criminal misconduct was improper because it evidenced a conspiracy to commit grand larceny, rather than grand larceny

and attempted grand larceny, the crimes he was charged with, is not well taken. The exception permitting admission of such evidence contemplates only that it be relevant to indicate circumstantially that a defendant committed the crime charged and not that the other criminal activity constituted the same crime as charged. *See, e.g., State v. Craddick, supra*; 1 C. Torcia, *Wharton's Criminal Evidence* § 248 (13th ed. 1972).

In his second assignment of error, defendant claims he was denied a fair trial when the trial court restricted the scope of his cross-examination of Mona Jacob. Prior to Ms. Jacob's cross-examination, defense counsel and the court were informed that she would invoke her Fifth Amendment privilege against self-incrimination and refuse to answer any inquiries into her alleged participation in passing worthless checks in Oregon.[2] Defense counsel, in what may be considered an offer of proof, requested leave to cross-examine the witness regarding "all prior check passing incidents that she's confessed to in her sworn statements to the police" to support the defense theory that Ms. Jacob was "framing" the defendant to protect Eugene Franklin, who, according to the defense, was the real perpetrator of these crimes. Counsel intended to show that Jacob's alleged confessions, which do not appear in the record, implicated Franklin by inference in other check cashing incidents she had confessed to, and therefore, *by inference*, that Franklin committed the crimes for which defendant was being tried.

The trial judge ruled that such inquiry was improper on two grounds. First, it was beyond the scope of direct examination and improper for the purpose of impeachment.[3] And second, response to such inquiry would tend to incriminate

---

[2]No challenge to the propriety of invoking Ms. Jacob's privilege in this manner has been raised. We therefore do not consider it.

[3]During argument before the trial court, defense counsel refused to concede his purpose in pursuing this line of inquiry was to impeach Ms. Jacob's credibility. We are hard put, as was the trial court, to characterize the avowed purpose for inquiring into these matters as anything other than an attempt to challenge the credibility of her testimony implicating the defendant.

Ms. Jacob, who, the trial court held, had not waived her Fifth Amendment privilege either by her alleged statements to the police or in her testimony on direct examination, in which no mention of these alleged incidents was made.

Defendant attempts in this assignment of error to create a potentially serious conflict between Ms. Jacob's right against self-incrimination and the defendant's right to confront witnesses against him. We think the trial court ruling excluding the offered evidence is sustainable on grounds which do not require a resolution of the potential conflict.

We start with the general rule that a defendant must be accorded great latitude when cross-examining an essential state witness for the purpose of demonstrating the motive for her testimony. *State v. Knapp*, 14 Wn. App. 101, 540 P.2d 898 (1975); *State v. Wills*, 3 Wn. App. 643, 476 P.2d 711 (1970); *State v. Tate*, 2 Wn. App. 241, 469 P.2d 999 (1970). Where such cross-examination is not totally precluded, its scope and extent rest within the sound discretion of the trial court. *State v. Cunningham*, 51 Wn.2d 502, 319 P.2d 847 (1958); *State v. Robbins*, 35 Wn.2d 389, 213 P.2d 310 (1950). This is especially true with respect to inquiry into collateral matters, tending to affect the weight of a witness' testimony. *State v. Goddard*, 56 Wn.2d 33, 351 P.2d 159 (1960). In the present case, defendant was not prohibited from questioning Ms. Jacob as to the motives underlying her testimony implicating the defendant. He was only precluded from inquiring into her alleged prior criminal acts which had not been inquired into during her direct examination, and which are unsupported factually from the record before us. His cross-examination as to her participation in the crimes for which defendant was on trial was unrestricted. Counsel was permitted to inquire into the witness' romantic involvement with Franklin, the fact that she had yet to be sentenced for her own participation in the crimes for which the defendant was charged, and the fact that she hoped her cooperation with the prosecution here would lead to probation. He was also allowed to cross-ex-

amine Ms. Jacob regarding inconsistent statements she had previously given the police.

The proffered evidence relating to Ms. Jacob's prior criminal activity did not fall within any exception to the general rule that a witness may not be impeached by showing prior acts of misconduct. *State v. Emmanuel,* 42 Wn.2d 1, 253 P.2d 386 (1953); *State v. Johnson,* 14 Wn. App. 225, 540 P.2d 435 (1975); *State v. Riconosciuto,* 12 Wn. App. 350, 529 P.2d 1134 (1974). Defendant's offer of proof referred to no specific acts, conduct, or statements on the part of the witness, and only vaguely tended to show a motive to fabricate in the most indefinite and speculative way. The offered evidence is too tenuous to meet the purpose for which it was offered, *State v. Jones,* 67 Wn.2d 506, 408 P.2d 247 (1965), *State v. Knapp, supra,* and is too vague to warrant a consideration of the Fifth Amendment question.

We find no support for the contention that defendant was denied his right to meaningful cross-examination of Ms. Jacob.

Judgment affirmed.

PETRIE, C.J., and REED, J., concur.