[No. 6419–3–I.   Division One.   April 28, 1980.]

THE STATE OF WASHINGTON, *Respondent*, v. LARRY
LEE RUSSELL, *Appellant*.

*John Thomas Borst,* for appellant.

*David S. McEachran, Prosecuting Attorney,* and *Steven C. Gish, Deputy,* for respondent.

CALLOW, C.J.—On the evening of December 20, 1977, defendant Russell, Troy Lykke and codefendant John Burcham drove from Russell's residence to Lykke's apartment. They carried with them marijuana that was to be sold by prior arrangement to undercover police agents. The marijuana was taken from the automobile into Lykke's apartment, where later that evening undercover agents purchased a quantity of marijuana from Lykke and his wife while Russell and Burcham waited in an adjoining room.

Lykke and his wife were arrested. The police then entered the adjoining room through a closed door, intending to search the room for other people. The defendants Russell and Burcham were discovered and arrested. A firearm, properly licensed to Russell, was found in Russell's pant pocket at the time of his arrest. Russell and Burcham were charged with complicity in the unlawful delivery of a controlled substance[1] while being armed with a firearm.[2]

The prosecution's principal witness was Troy Lykke. Lykke was allowed to testify, over pretrial motion to exclude, that on November 23, 1977, he purchased from defendant Russell approximately $500 of marijuana. Both defendants were convicted of complicity in the unlawful delivery of a controlled substance while armed with a firearm. The trial court, however, struck the firearm clause from Burcham's verdict but left the firearm allegation intact as to defendant Russell. Russell appeals, raising seven principal issues.

*Did the trial court err in allowing testimony of an alleged prior delivery of marijuana by the defendant Russell to the prosecution witness Lykke?*

Russell contends that Lykke's testimony that he purchased marijuana from defendant Russell on November 23, 1977, approximately a month before the commission of the charged offense, was inadmissible in that it pertained to activity which was independent and unrelated to the charged offense, was without relevance, was unnecessary to prove the crime charged and was prejudicial. The defendant alleges that the trial court abused its discretion by admitting evidence of "prior criminal activity" without first determining whether the prejudicial effect of such evidence was outweighed by its relevancy and necessity. *State v. Goebel*, 36 Wn.2d 367, 218 P.2d 300 (1950).

---

[1] RCW 9A.08.020(3)(a)(ii); RCW 69.50.401(a).

[2] RCW 9.41.025.

The State contends that the November 23 sale was not an independent or isolated prior crime, but was part of the crime alleged in the information. The State reasons that the November 23 sale was related sufficiently to the delivery of December 20 as to be part of the same transaction. Therefore, reasons the State, evidence of the November 23 marijuana sale was admissible under the rule that evidence of criminal conduct, other than that for which a defendant is being tried, is admissible when such conduct is an inseparable part of the whole deed. *E.g., State v. Niblack,* 74 Wn.2d 200, 443 P.2d 809 (1968).

■ The testimony supports the State's theory. The challenged testimony was interwoven with the charged offense. There was testimony that no money was exchanged between Lykke and Russell during the November 23 sale, but that Russell would be paid when Lykke resold the marijuana. There was also testimony that some of the marijuana from the November 23 sale was later given by Lykke to undercover agents as a sample of what could be sold the agents at some undetermined future date. Finally, there was testimony that some of the marijuana sold by Lykke to the undercover agents on December 20, for which defendant Russell was charged with complicity in the unlawful delivery of a controlled substance, was from the quantity which Russell delivered to Lykke on November 23. All of this connected the two incidents even though they were separated by nearly a month in time.

The defendant was charged with complicity in the unlawful delivery of a controlled substance. The State was entitled to explain the circumstances surrounding the December 20 delivery, from where and whom a portion of that marijuana was procured, and what was to be done with the money received from the undercover agents. The challenged testimony did not involve a completely unrelated crime, *see State v. Dinges,* 48 Wn.2d 152, 292 P.2d 361 (1956), but involved a unified series of events which fully described the offense charged. *State v. Wills,* 21 Wn. App. 677, 586 P.2d 543 (1978); *State v. Battle,* 16 Wn. App. 66,

553 P.2d 1367 (1976); *State v. Hatch*, 4 Wn. App. 691, 483 P.2d 864 (1971).[3] The defendant contends that it was error for the trial court to refuse to give an instruction limiting the use of the criminal activity of November 23. We disagree. Limiting instructions are necessary to eliminate prejudicial effects of prior independent and unrelated crimes admitted into evidence and to ensure, as best as possible, that such evidence is restricted to its proper scope. *E.g., State v. Goebel, supra.* Here, the November 23 transaction is neither independent nor unrelated to the December 20 delivery. A limiting instruction is not required under these circumstances.

*Does the firearm clause of RCW 9.41.025 apply to an accomplice who is in possession of a firearm where the principal is neither in possession of a firearm nor has knowledge of the firearm in the possession of the accomplice?*

The defendant maintains that, as a matter of statutory construction, the enhanced penalty provisions of RCW 9.41.025 cannot apply to him. He asserts that since the statutory scheme of RCW 9A.08.020 imposes liability upon a person when a crime is committed by another person for which he is legally accountable, the behavior of the principal for whose conduct the accomplice is legally accountable is determinative of whether or not the firearm clause of RCW 9.41.025 can apply to the accomplice. Therefore, defendant maintains, the enhanced penalty provisions of RCW 9.41.025 cannot apply to one charged as an accomplice under RCW 9A.08.020 where the principal had no firearm in his possession nor any knowledge that the accomplice was carrying a firearm.

---

[3]*See also People v. Wardwell,* 167 Cal. App. 2d 560, 334 P.2d 641 (1959); *Hudson v. People,* 196 Colo. 211, 585 P.2d 580 (1978); *People v. McKay,* 191 Colo. 381, 553 P.2d 380 (1976); *People v. Vails,* 43 N.Y.2d 364, 372 N.E.2d 320, 401 N.Y.S.2d 479 (1977). *See generally* 1 C. Torcia, *Wharton's Criminal Evidence* § 254 (13th ed. 1972); Annot., 93 A.L.R.2d 1097 (1964).

■ The defendant ignores the plain language of RCW 9.41.025 and RCW 9A.08.020. He was found to be an accomplice in the unlawful delivery of a controlled substance and was found, by special verdict, to be in the possession of a firearm when the above felony was committed. The enhanced penalty provisions of RCW 9.41.025, therefore, are directly applicable to him. His argument also ignores the following language in *State v. Bennett*, 20 Wn. App. 783, 582 P.2d 569 (1978), at page 788:

> Under RCW 9A.08.020, every person involved in the commission of a felony, whether he directly commits the offense or aids and abets in its commission, is regarded and punished as a principal.

*See also State v. Carothers*, 84 Wn.2d 256, 525 P.2d 731 (1974); *State v. Baylor*, 17 Wn. App. 616, 565 P.2d 99 (1977). While a principal may not be subject to the penalty enhancement provisions where he is unarmed and without knowledge that his accomplice is armed, this does not mean that the provision is inapplicable to the armed accomplice. *See Key v. State*, 563 S.W.2d 184 (Tenn. 1978).

*Should an implied exception exist to the enhancement penalty provisions of RCW 9.41.025 where the firearm is legally licensed to the carrier?*

■ The firearm found on defendant Russell's person was legally licensed to him pursuant to RCW 9.41.050 and .070. The firearm, located in Russell's pant pocket, was neither used nor wielded in any way when the officers entered the room. He argues that logic and reason compel the court to find an implied exception to the enhancement penalty provisions of RCW 9.41.025 where the firearm is legally licensed to the carrier. We disagree. The statute is intended to penalize persons who are in possession of a firearm while committing certain crimes and to discourage the violence that may result from the commission of criminal actions while armed. The status of the firearm, whether loaded or unloaded, *State v. Hattori*, 19 Wn. App. 74, 83, 573 P.2d 829 (1978), or wrestled away from the victim, *State v.*

*Bradley,* 20 Wn. App. 340, 581 P.2d 1053 (1978), or licensed or unlicensed, is immaterial. A license to carry a concealed weapon is not a license to carry a concealed weapon while committing a crime. *State v. Hattori, supra* at 82 said:

> The apprehension in the mind of the victim of a crime committed by a defendant armed with a gun is the same whether the gun is loaded or unloaded. . . . In addition, an unloaded gun can easily be loaded during the commission of the crime, and, thus, a defendant armed with an unloaded gun has the same potential for inflicting violence as a defendant armed with a loaded gun.

(Citations omitted.) The same can be said about a licensed firearm in the possession of a person committing a crime.

> *Was entry by undercover police officers into the room where Russell was discovered a violation of the "knock and wait" rule of RCW 10.31.040 which requires suppression of the firearm?*

The record reveals that three undercover police officers were invited into the Lykke apartment by Lykke for the express purpose of consummating a previously arranged marijuana sale. The presale negotiation and the eventual sale took place in the kitchen of Lykke's apartment and involved only the three officers, Lykke and Lykke's wife. After money for the sale exchanged hands, Lykke and his wife were arrested. There was testimony that the Lykkes were told to be quiet and to move into a corner of the kitchen in case any violence should occur. One officer remained with the Lykkes, while the other two, with guns drawn, proceeded through a door separating the kitchen from the living room. The testimony is disputed as to whether the door separating the two rooms was closed completely or open an inch or two. The testimony is also unclear whether the door was drawn or kicked open. The defendants Russell and Burcham were found seated in the living room. They were arrested and told to lie on the floor with their arms extended. A firearm was found in Russell's

front pocket. The officers thereafter secured a search warrant to search the apartment.

The officers were not certain as to the exact location of Russell and Burcham in the apartment throughout the presale negotiation and eventual sale. They were, however, fairly certain of Russell's and Burcham's presence somewhere in the apartment since the Lykke apartment was under surveillance for several hours prior to the police entry and Russell and Burcham had been observed entering the apartment.

RCW 10.31.040 provides:

> Officer may break and enter. To make an arrest in criminal actions, the officer may break open any outer or *inner door,* or windows of a dwelling house or other building, or any other inclosure, if, after notice of his office and purpose, he be refused admittance.

(Italics ours.) Under this statute, forcible entry must be preceded by an announcement of the identity and purpose of the police officers. *Ker v. California,* 374 U.S. 23, 10 L. Ed. 2d 726, 83 S. Ct. 1623 (1963); *State v. Young,* 76 Wn.2d 212, 455 P.2d 595 (1969). A violation of this rule, unless excused by exigent circumstances, requires that any evidence thereby obtained be suppressed. *State v. Johnson,* 11 Wn. App. 311, 522 P.2d 1179 (1974); *State v. Hatcher,* 3 Wn. App. 441, 475 P.2d 802 (1970).

The defendant maintains that RCW 10.31.040 applies to the breaking of an *inner* door for the purpose of making an arrest of additional suspects and that no exigent circumstances existed which would excuse compliance with the statute. He asserts that the firearm found on him must be suppressed. The State concedes that the "inner door" language of RCW 10.31.040 applies when the police break open an inner door for the purpose of making an arrest of additional suspects, but seeks to justify the police entry into the living room under the doctrine of exigent circumstances. The State's contention is that entry into the living room

was for the protection of the officers since they had knowledge which might lead them to believe that there were others in the apartment who might try to thwart the arrest. It is recognized that strict compliance with RCW 10.31.040 should be excused where police have substantial and specific concern for their own safety.[4]

The application of RCW 10.31.040 and, in particular, the scope of the "inner door" provision of the rule, are raised for the first time on appeal. The issue was not raised at trial nor argued by counsel in pre- or post-trial motion. The scope of the term "inner door" within the statute has not been addressed previously in Washington.[5]

■ Generally, issues raised for the first time on appeal are not subject to review. However, constitutional issues may be so raised. *State v. Talley*, 14 Wn. App. 484, 543 P.2d 348 (1975). In *State v. Talley, supra*, the question of whether the police had properly complied with the requirements of RCW 10.31.040 in entering the outer door of an apartment was held to be a sufficient constitutional issue to enable it to be raised for the first time on appeal. However, since defense counsel in *Talley* did not raise the issue at trial, the record failed to establish whether RCW 10.31.040 was complied with. It was therefore necessary to remand the case to the trial court for a factual determination.

■ The State bears the burden of demonstrating that the officers' entry was made with consent, pursuant to the

---

[4]*State v. Carson*, 21 Wn. App. 318, 584 P.2d 990 (1978); *State v. Johnson*, 11 Wn. App. 311, 522 P.2d 1179 (1974); *State v. Wilson*, 9 Wn. App. 909, 515 P.2d 832 (1973); *State v. Toliver*, 5 Wn. App. 321, 487 P.2d 264 (1971).

[5]In *People v. Webb*, 36 Cal. App. 3d 460, 111 Cal. Rptr. 524 (1973), it was held that a statute similar to RCW 10.31.040 in all respects, except that it pertained to *search* warrants, applied to inner doors because the statute explicitly used those terms. In *People v. Glasspoole*, 48 Cal. App. 3d 668, 677, 121 Cal. Rptr. 736 (1975), it was held that a statute similar to RCW 10.31.040 in all respects, except that it did not contain the words "inner door," was held applicable to the breaking of an inner door for the purpose of making an arrest of additional suspects, at least where the police entry through the outer door did not give any notice to the occupants of the closed inner rooms.

statute, or that there existed exigent circumstances negating the duty to comply with the requirements of RCW 10.31.040 or that entry was made with permission. *State v. Ellis,* 21 Wn. App. 123, 584 P.2d 428 (1978); *State v. Talley, supra.* Here, an examination of the record reveals that the officers were within the apartment at the invitation of the occupants. Their presence was legal. Then they arrested persons therein for the commission of a felony. We hold the actions of the officers in searching the other rooms of the apartment under the circumstances was reasonable. There was no denial of due process to the defendant. *See State v. Garske,* 74 Wn.2d 901, 447 P.2d 167 (1968); *McNear v. Rhay,* 65 Wn.2d 530, 398 P.2d 732 (1965); *State v. Rye,* 2 Wn. App. 920, 471 P.2d 96 (1970).

> *Was there sufficient evidence for the jury to find that Russell was in the possession of a firearm at the time he was an accomplice in the delivery of a controlled substance?*

The defendant's challenge to the sufficiency of the evidence asserts that there was no proof that Russell was in possession of a firearm at the time he furnished marijuana to Lykke, but that the evidence established only that Russell was in possession of a firearm at the time of his arrest in the enclosed living room of the Lykke apartment. The defendant maintains that RCW 9.41.025 enhances a penalty only if a person is in possession of a firearm at the time of the commission of the crime charged (*i.e.,* aiding or agreeing to aid the delivery of a controlled substance) and not for being in possession of a firearm at the time of one's arrest.

A challenge to the sufficiency of the evidence admits the truth of the evidence of the party against whom the challenge is made, along with all inferences that can reasonably be drawn therefrom, and it requires that the evidence be interpreted most strongly against the challenger and in a light most favorable to the opposing party. *State v. Fateley,* 18 Wn. App. 99, 566 P.2d 959 (1977). The record

discloses that on the evening of December 20, 1977, and before the arrival of the undercover agents, Russell helped Lykke transport the marijuana from his residence to Lykke's apartment. Except for a brief period when Russell and Burcham surveyed what was believed to be a suspicious automobile parked on the street, Russell remained in the apartment until the sale to the undercover agents. A firearm was found in Russell's pocket when he was arrested in the living room.

A reasonable inference to be drawn from this evidence is that a firearm was in his possession at the time of the commission of the charged offense shortly before his arrest. We do not weigh the evidence, but must determine its sufficiency. Substantial evidence exists from which the jury could reasonably infer that Russell was armed while engaged in the delivery of the drugs. *State v. Gibson*, 79 Wn.2d 856, 490 P.2d 874 (1971); *State v. Fateley, supra.*

*Did the court adequately instruct the jury as to the requisite elements of the crime charged?*

The defendant initially challenges the court's instruction No. 6:

To convict the defendants of the crime of Complicity in the Unlawful Delivery of a Controlled Substance, each of the following elements of the crime must be proved beyond a reasonable doubt:

(1) That on or about the 20th day of December, 1977, the defendants, acting as accomplices to Troy Lykke, with knowledge that their actions would promote or facilitate the commission of the crime of Unlawful Delivery of a Controlled Substance, to–wit: marijuana, did aid or agree to aid Troy Lykke in the commission of Unlawful Delivery of a Controlled Substance.

(2) That the act or acts occurred in Whatcom County, Washington.

If you find from the evidence in this case that the State has proved beyond a reasonable doubt all of the above–mentioned elements, then it will be your duty to return a verdict of guilty to the crime charged.

On the other hand, if after weighing all of the evidence and lack of evidence, you then entertain a reasonable doubt as to the establishment of any of the foregoing elements as above referred to, then it will be your duty to return a verdict of not guilty to the crime charged.

■ The defendant maintains that by stringing together the elements of an act and a mental state into paragraph (1) of instruction No. 6, the jury was invited to assume the element of knowledge from a finding of the requisite act. The defendant argues that by not setting forth the element of knowledge in a separate paragraph as was proposed,[6] the State's burden of proof was minimized unconstitutionally. It is not improper to combine the act and mental state elements of an offense in a single paragraph of one instruction. The elements of the offense are set out with sufficient clarity to inform the jury that the defendants had to commit the act in a specific frame of mind. The State's burden of proof was not lessened. If instructions, read as a whole, are such that they are readily understood and not misleading to the ordinary mind, they are sufficient. *State v. Dana*, 73 Wn.2d 533, 439 P.2d 403 (1968). The instruction given afforded the defendant an opportunity to fully argue his theory of the case. *State v. Dana, supra.*

---

[6]Defendant's proposed instruction No. 10 reads as follows:

"To convict any defendant of the crime of Complicity in the Unlawful Delivery of a Controlled Substance, each of the following elements of the crime must be proved beyond a reasonable doubt:

"(1) That on or about the 20th day of December, 1977, the defendants did aid or agree to aid Troy Lykke in the commission of unlawful delivery of a controlled substance, to wit: marijuana;

"(2) That on the above-referenced date the defendants acted with knowledge that their actions would promote or facilitate the commission of said crime of unlawful delivery of a controlled substance, to wit: marijuana; and

"(3) That the act or acts occurred in Whatcom County, Washington.

"If you find from the evidence in this case that the State has proved beyond a reasonable doubt all of the above-mentioned elements, then it will be your duty to return a verdict of guilty to the crime charged.

"On the other hand, if after weighing all of the evidence and lack of evidence, you then entertain a reasonable doubt as to the establishment of any of the foregoing elements, then it will be your duty to return a verdict of not guilty to the crime charged."

The defendant next maintains that the trial court erred in refusing to give the defendant's proposed instruction No. 2:

To share guilt with a principal by aiding and abetting, one must share the knowledge of that principal. As with all other elements of the crime charged, such element of criminal knowledge must be proved to you beyond a reasonable doubt.

We disagree. The court's "to convict" or "formula" instruction No. 6 charged the jury that an accomplice must act with knowledge that he is promoting or facilitating the commission of a crime. The court's following instruction, No. 7, defined an accomplice.[7] It was not error to refuse the proposed instruction. *State v. McKeown*, 23 Wn. App. 582, 596 P.2d 1100 (1979).

The defendant next challenges the fifth paragraph of the court's instruction No. 8.[8] It is his position that by

---

[7]The court's instruction No. 7 states:

"A person who is an accomplice in the commission of a crime is guilty of that crime whether present at the scene or not.

"A person is an accomplice in the commission of a crime, if, with knowledge that it will promote or facilitate the commission of the crime, he or she either:

  "(1) solicits, commands, encourages, or requests another person to commit the crime; or

  "(2) aids or agrees to aid another person in planning or committing the crime.

"The word 'aid' means all assistance whether given by words, acts, encouragement, support, or presence. A person who is present at the scene and is ready to assist by his or her presence is aiding in the commission of the crime."

In an action alleging complicity in the delivery of a controlled substance, the court in *State v. McKeown*, 23 Wn. App. 582, 596 P.2d 1100 (1979), approved the above instruction. *See also* WPIC 10.51, 11 Wash. Prac. 97 (1977).

[8]The court's instruction No. 8 stated:

"The defendants are accused of committing a crime while in the possession of a firearm.

"In the event that you find that neither of the defendants are guilty of the crime of Complicity in the Unlawful Delivery of a Controlled Substance, then it will not be necessary for you to consider the second accusation relating to the possession of a firearm.

"In the event that you find that either or both of the defendants are guilty of the crime of Complicity in the Unlawful Delivery of a Controlled Substance, then it will be necessary for you to further determine whether that, or those, defendants were in the possession of a firearm.

instructing the jury that it was immaterial whether a permit to carry a gun had been issued, the court commented on the evidence in violation of Const. art. 4, § 16. The defendant maintains that the jury could infer from the instruction that the trial court believed that possession of a firearm, whether licensed or not, bore upon defendant's knowledge of the illegal transaction in the other room. Russell argues that if his proposed instruction had been given,[9] the jury might have believed that the defendant was in the Lykke apartment for some innocuous purpose, legally in possession of a firearm, and only unwittingly aided in the crime committed by Lykke.

We do not find the instruction to be a comment on the evidence, misleading, or an inaccurate statement of the law. When read with the other instructions, it cannot be said that the instruction created an inference that the court believed defendant Russell had knowledge of the illegal proceedings taking place in the kitchen of Lykke's apartment. The fact that Russell had a license to carry the firearm was admitted into evidence. The court's instruction did not constitute a judicial comment on the evidence and defendant's proposed instruction was properly refused.

*Was it reversible error for the trial court to communicate with the jury in the absence of counsel, without notice to counsel and without creation of a verbatim record?*

---

"If you find that either or both of the defendants were in the possession of a firearm at the time either or both of them committed the crime of Complicity in the Unlawful Delivery of a Controlled Substance, then you shall so indicate your findings on the special verdict form attached.

"In this connection, *the sole question is whether or not a firearm was, in fact, in the possession of the defendants. It shall make no difference to you in answering this question whether or not a permit had been issued for the carrying of the gun.*" (Italics ours.)

[9]Defendant's proposed instruction No. 3 reads:
"Under Washington law a person legally licensed to carry a concealed weapon may legally carry and possess a firearm concealed on his person."

At the time of post-trial motions, defense counsel first learned of possible communications made by the trial judge, through his bailiff, to the jury during its deliberations. A special hearing was held on the matter which allowed counsel to question the individual who served as bailiff during the trial. His testimony revealed that during the course of the jury's deliberation, the jury sought clarification of one instruction. The bailiff expressly informed the jury foreman that any inquiry must be in writing before it would be conveyed to the judge. The foreman then handwrote the following inquiry:

"Concerning John Steven Burcham—armed with a firearm—does this mean as interpreted on pg. 10 or does this mean an actual firearm."

The bailiff then testified that he telephoned the trial judge at his home, read the note to him, then read the instruction to him. The judge responded that the bailiff should inform the foreman that the instruction meant exactly what was written in the instruction. The bailiff testified that that was what he informed the foreman. The bailiff also properly refused a request by a member of the jury to see the trial transcript. Approximately 15 minutes after the jury received this information, a verdict was returned. The court struck the firearm clause from Burcham's verdict before sentencing Burcham. Russell now maintains that he was prejudiced by the above communication. He asserts that any communication made in the absence of counsel, without notice to counsel and without creating a verbatim report, is conclusively presumed to be prejudicial. We disagree.

■ Early Washington decisions support the defendant's view that any communication by the judge to the jury during deliberations without the presence of the accused and the accused's counsel is presumed to be prejudicial. *State v. Waite*, 135 Wash. 667, 238 P. 617 (1925); *State v. Shutzler*, 82 Wash. 365, 144 P. 284 (1914); *State v. Wroth*, 15 Wash. 621, 47 P. 106 (1896); *Linbeck v. State*, 1 Wash. 336, 25 P.

452 (1890). *But see Marine Sav. Bank v. Young,* 5 Wash. 394, 31 P. 864 (1892).

However, an ex parte judicial communication to a jury, while error, may be harmless if an appellate court can conclude that the error is harmless beyond a reasonable doubt. *State v. Saraceno,* 23 Wn. App. 473, 475–76, 596 P.2d 297 (1979). This court recently reached an analogous conclusion in *State v. Safford,* 24 Wn. App. 783, 604 P.2d 980 (1979), wherein we held that an ex parte communication by a trial judge to a jury which is negative in nature and conveys no affirmative information is not prejudicial and, hence, is not reversible error. *See also State v. Crowell,* 92 Wn.2d 143, 594 P.2d 905 (1979) (out of court communication by bailiff alone); *State v. Christensen,* 17 Wn. App. 922, 567 P.2d 654 (1977) . (out of court communication by bailiff alone); *Marine Sav. Bank v. Young, supra.* We find no prejudice to the defendant resulted from the manner in which this was handled. The bailiff testified that he told the jury foreman exactly what the trial judge stated, that is, that the instruction meant exactly what was written therein. The statement was entirely neutral. It did not define or explain an instruction, nor did it inform the jury on a point of law. Moreover, the inquiry itself referred solely to the defendant Burcham. While the appropriate practice is to communicate with a deliberating jury only with all counsel and the trial judge present,[10] we conclude that since the communication did not prejudice the defendant, it was not reversible error. *State v. Safford, supra; State v. Saraceno, supra.*

The judgment is affirmed.

WILLIAMS and RINGOLD, JJ., concur.

Reconsideration denied June 19, 1980.

---

[10]*See* RCW 4.44.300; RCW 4.44.320; CrR 6.7; CrR 6.15(f)(1); WPIC, *The Criminal Jury Trial,* App. C, VIII(B)(1), 11 Wash. Prac. 642 (1977).